# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

─────────────────────────────────────────────

| | |
|---|---|
| SHELDON GREEN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 21-cv-2518-JPM-tmp |
| | ) |
| FEDEX SUPPLY CHAIN, INC., | ) |
| | ) |
|     Defendant. | ) |

─────────────────────────────────────────────

## REPORT AND RECOMMENDATION
─────────────────────────────────────────────

Before the court are the following three motions: a Motion to Dismiss or for Summary Judgment filed by defendant FedEx Supply Chain, Inc. ("FedEx"), a Motion for Reconsideration of Claim filed by *pro se* plaintiff Sheldon Green, and a Motion to Strike filed by FedEx. (ECF Nos. 75, 79, 85.) For the reasons set forth below, the undersigned recommends granting FedEx's Motion to Dismiss or for Summary Judgment, denying Green's Motion for Reconsideration of Claim, and denying as moot FedEx's Motion to Strike.

## I.   PROPOSED FINDINGS OF FACT

### A.  Procedural History

On July 2, 2021, Green filed a *pro se* complaint against his former employer, FedEx, in state court. (ECF No. 1.) On August 11, 2021, FedEx filed a notice of removal in the United States District Court for the Western District of Tennessee. (Id.) Green filed a

*pro se* amended complaint on August 13, 2021, which contained allegations of defamation, libel, unlawful termination, and religious discrimination. (ECF No. 8.)

On May 15, 2022, FedEx filed a Motion to Dismiss or for Summary Judgment.[1] (ECF No. 75.) Green did not file a response to the motion but instead filed six miscellaneous documents after the motion was brought. (ECF Nos. 77, 78, 79, 80, 84, 85.)[2] On May 27, 2022, Green filed a second amended complaint without seeking leave from the court. (ECF No. 77.) The same day, Green filed a Motion for Reconsideration of Claim, which the undersigned construes as a motion to amend. In this motion, Green states that his second amended complaint, (ECF No. 77), includes two new claims: solicitation of a crime and intentional infliction of emotional distress. On June 3, 2022, FedEx filed a response opposing this

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2]These filings include a second amended complaint, (ECF No. 77); a memorandum in support of Green's Renewed Motion for Summary Judgment, (ECF No. 78); a Motion for Reconsideration of Claim, (ECF No. 79); an Offer of Proof for Plaintiff's Need for Summary Judgment, (ECF No. 80); a Notice of Adverse Inference Instructions, (ECF No. 84); and a motion for sanctions. (ECF No. 85.)

motion. (ECF No. 83.) On June 20, 2022, FedEx filed a motion to strike the amended complaint. (ECF No. 89.)

**B.    Summary Judgment Briefing**

Green failed to file a response that addresses FedEx's statement of undisputed material facts. (ECF Nos. 35-37.) Local Rule 56.1 requires that a party opposing a motion for summary judgment "must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." LR 56.1(b). Furthermore, "[e]ach disputed fact must be supported by specific citation to the record." Id.

Similarly, Rule 56 of the Federal Rules of Civil Procedure requires that a party support or challenge factual assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). When a party fails to properly challenge an opposing party's assertion of fact, Rule 56(e)(2) permits the

court to "consider the fact undisputed for purposes of the motion."
Fed. R. Civ. P. 56(e)(2); <u>see also</u> LR 56.1(d) ("Failure to respond
to a moving party's statement of material facts . . . within the
time periods provided by these rules shall indicate that the
asserted facts are not disputed for purposes of summary
judgment."). The court need not consider any unsupported factual
assertions.[3] <u>See</u> <u>id.</u>; <u>see also</u> <u>Gunn v. Senior Servs. of N. Ky.</u>,
632 F. App'x 839, 847 (6th Cir. 2015) ("'[C]onclusory and
unsupported allegations, rooted in speculation,' are insufficient
to create a genuine dispute of material fact for trial.") (quoting
<u>Bell v. Ohio State Univ.</u>, 351 F.3d 240, 253 (6th Cir. 2003)).
Accordingly, the statement of undisputed material facts filed by
FedEx, which is supported by sworn declarations and/or citations
to the record, is deemed undisputed for the purposes of resolving
the motion to the extent FedEx seeks summary judgment.

**C.    Green's Employment History with FedEx**

---

[3]This includes any factual allegations contained in Green's unsworn
filings following FedEx's motion. <u>See</u> <u>Wallace v. Brown</u>, No. 2:17-
cv-02269, 2020 WL 4228310, at *3 (W.D. Tenn. Jul. 23, 2020)
("Wallace's memorandum is unsworn and is not competent summary
judgment evidence."); <u>see also</u> <u>King v. UT Medical Group, Inc.</u>, No.
09-2080-SHM-dkv, 2011 WL 13269768, at *3 (W.D. Tenn. Mar. 3, 2011)
("The Court cannot consider any factual assertions that are made
in legal memoranda or that are not sworn to under penalty of
perjury.").

From November 4, 2020, through August 6, 2021, FedEx employed Green as a Warehouse Worker in the Handpack department at the facility that FedEx operates for its customer, Cummins, at 5800 Challenge Drive, Memphis, Tennessee. (ECF No. 75-3 at PageID 297) (citing Declaration of Joel Frierson ("Frierson decl.") ⁋ 3; Affidavit of Jeffrey Calo ("Calo Aff.") ⁋ 3; Affidavit of Audrey Windham ("Windham Aff.") ⁋ 3). Green's employment with FedEx was at will. (Id. at PageID 298) (citing Frierson decl. ⁋ 4).

Green, like all other employees working in the Handpack department, had a daily True Efficiency Percentage ("TEP") performance target of 90. (Id. at PageID 304) (citing Calo Aff. ⁋ 7.) Between April 1, 2021, and August 6, 2021, Green worked all or part of seventy-four days and his average TEP was 46.3. (Id.) (citing Calo Aff. ⁋ 8.) During this time, Green met or exceeded his TEP target only 4 times. (Id.) By way of comparison, the rest of the teammates in the Handpack department averaged a TEP of 78.8 during the same time period. (Id.) Therefore, according to Operations Manager Jeffrey Calo, his job performance was not satisfactory. (Id.)

**D. Green's Suspension**

Around July 2021, a contract worker told Green's supervisor, Audrey Windham, that Green had asked her to talk to him outside of

work, which made her uncomfortable because she was married. (Id. at PageID 304) (citing Windham Aff. ¶ 4.) Windham told Green that he needed to leave the contract worker alone. (Id.) As a result of this incident, Green filed this lawsuit in the Circuit Court of Shelby County, Tennessee on July 2, 2021. (ECF No. 1.)

On July 12, 2021, Human Resources Business Partner Jenna Mednikow met with Green.[4] (Id.) (Frierson decl. ¶ 27.) Mednikow later informed her direct supervisor, Joel Frierson, a District Manager in the Human Resources department, that, at the meeting, Green was disheveled, agitated, and talked about telling co-workers his dreams of the rapture, locusts, Jesus's return, demons, and evil within FedEx. (Id. at PageID 300-01.) Mednikow also disclosed that Green's appearance, behavior, and statements at that meeting caused her concern that he may present a danger to himself or others. (Id. at PageID 301.) In order to diffuse the situation at the meeting, Mednikow asked Green if he would like to take a few days off. (Id.) She then collected Green's ID badge and sent him home. (Id.)

After receiving Mednikow's report, Frierson emailed a photo of Green to the facility security manager employed by Cummins,

---

[4]It is unclear from the record who requested this meeting or its purpose.

stating, "We'd like to initiate a BOLO [("Be on the Lookout")] on this teammate until further notice. He has not been terminated but his access badge was taken today and, pending completion of an investigation, we would like to ensure he has no access to either of the MDC facilities." (Id.)

On July 13, 2021, FedEx Regional Security Manager Manuel Cangas and Frierson spoke to Green by telephone. (Id.) (citing Frierson decl. ¶ 28.) During this phone conversation, Green mentioned having grievances against Calo but, when asked for specifics, he refused to elaborate, saying the details were "classified." (Id.) Green also claimed he had been ostracized and wrongfully accused of being a kidnapper and rapist, but he would not provide any details. (Id.) Green did not indicate an intention to harm anyone, and said he had no intention of harming himself. Accordingly, FedEx allowed Green to return to work on July 20, 2021. (Id. at PageID 301-02) (citing Frierson decl. ¶ 28.) Green was paid for the days that he was suspended from work between July 12 and July 20, 2021. (Id. at PageID 302) (citing Frierson decl. ¶ 29.)

On July 20, 2021, Green returned to work, and FedEx Security Specialist Triston Anderson and Frierson met with Green. (Id.) (citing Frierson decl. ¶ 30.) At this meeting, Frierson told Green to be considerate of co-workers when approaching them to talk about

religious topics and reminded him that initiating such conversations risks offending some co-workers. (Id.) Green refused to stay on-topic and he again mentioned having grievances with Calo without offering details or explaining who was involved, other than to say that Calo had lied about him in some way. (Id.)

**E.    Documented Discussions and Green's Termination**

Apart from the issues that led to Green's suspension, FedEx also had consistent issues with Green's attendance. Personal time for FedEx employees is paid time off from work that can be used for sick or personal reasons. (Id.) (citing Frierson decl. ¶ 5.) Any time utilized for those reasons will be considered an authorized absence. (Id.) Personal time may be used to authorize a full-day absence and/or a tardy. (Id.) Unlike personal time, vacation time for FedEx employees must be scheduled in advance and cannot be used to excuse an unauthorized absence. (Id.) (citing Frierson decl. ¶ 6.) An "authorized absence," whether paid time off or unpaid time off, is one requested by the employee in advance and permitted by their manager as approved authorized time off. Id. (citing Frierson decl. ¶ 7.) The use of personal time is considered authorized time for both full day absences and for tardies. (Id.) An "unauthorized absence" may be: (1) an absence requested by an employee but not approved; (2) a situation when an employee calls off prior to their scheduled work time but the

manager does not approve the absence; or (3) an absence, regardless of the reason, where personal time is not available for use. (Id.) (citing Frierson decl. ¶ 8.) A "no call/no show" occurs when an employee does not call and does not show up for their scheduled work time. This is a type of unauthorized absence. (Id.) (citing Frierson decl. ¶ 9.)

Green was hired as a Warehouse Worker in November of 2020, and accrued sixteen hours of personal time by February 1, 2021, after completing ninety days of employment. (Id.) (citing Frierson decl. ¶ 10.) Green exhausted this personal time by using eight hours on both February 2, 2021 and February 26, 2021. (Id. at PageID 298-99) (citing Frierson decl. ¶ 11.) On February 3, 2021, Green was charged with an unauthorized absence when he called in absent at 6:43 a.m., after his shift had already started. (Id. at PageID 299) (citing Frierson decl. ¶ 12.) On February 27, 2021, Green was charged with a no call/no show. (Id.) (citing Frierson decl. ¶ 13.) On February 28, 2021, Green was charged with another no call/no show. (Id.) (citing Frierson decl. ¶ 14.) On March 8, 2021, Green was charged with being tardy after he clocked in for work at 4:09 a.m., when his shift started at 3:45 a.m. (Id.) (citing Frierson decl. ¶ 15.) On March 15, 2021, Green was charged with an unauthorized absence when he called in absent at 3:58 a.m.,

but he had no personal time available to cover the absence. (Id.)
(citing Frierson decl. ¶ 16.)

By June 1, 2021, Green had accrued twenty-four hours of
personal time. (Id.) (citing Frierson decl. ¶ 17.) Green exhausted
this accrued personal time by using eight hours each on June 2,
2021, June 3, 2021, and June 4, 2021. (Id.) (citing Frierson decl.
¶ 18.) On June 8, 2021, Green was charged with an unauthorized
absence when he called in absent at 5:37 a.m., but he had no
personal time available to cover the absence. (Id.) (citing
Frierson decl. ¶ 19.) On June 15, 2021, Green was again charged
with an unauthorized absence when he called in absent at 5:35 a.m.,
but he had no personal time available to cover the absence. (Id.)
(citing Frierson decl. ¶ 20.)

In a team meeting in 2021 to discuss shift scheduling, Green
made statements about Saturdays being the "true Sabbath" and that
FedEx employees should not work on Saturdays. Calo told him to
stop making these comments, as team meetings were not the place to
"evangelize" and "talk about God." (Id. at PageID 303-04) (citing
Calo Aff. ¶ 6.) On July 1, 2021, Green submitted a Religious
Accommodation Request, asking that he not be scheduled to work on
Saturdays. (Id. at PageID 300.) Although FedEx did not make a
formal determination on Green's Religious Accommodation Request

prior to his termination, FedEx did not schedule him to work on any Saturdays in July 2021. (Id.) In addition, FedEx retroactively changed Green's unauthorized absences on May 15 and June 18, 2021, his no call/no shows on June 5 and June 26, 2021, and a tardy (May 5, 2021), to authorized absences on Green's attendance record because they fell on Saturdays. (Id.) (citing Frierson decl. ¶ 22.)

By July 1, 2021, Green had accrued eight hours of personal time. (Id. at PageID 299-300) (citing Frierson decl. ¶ 21.) Green exhausted this personal time by using eight hours on July 2, 2021. (Id.) (citing Frierson decl. ¶ 23.) Once again, on Wednesday, July 7, 2021, Green was charged with a no call/no show. (Id.) This was later amended to an unauthorized absence when he called in absent at 5:17 a.m., but he had no personal time available to cover the absence. (Id.) (citing Frierson decl. ¶ 24.) On both July 8 and 9, 2021, Green was charged with a no call/no show. (Id.) (citing Frierson decl. ¶ 25-26.) On July 20, 2021, Green was charged with being tardy when he clocked out for lunch at 11:03 a.m. and did not clock back in until 12:15 p.m. Employees are allowed up to forty minutes for their lunch break. (Id.) (citing Frierson decl. ¶ 31.)

On Monday, July 26, 2021, Green was charged with another no call/no show. (Id.) (citing Frierson Decl. ¶ 32.) On July 28, 2021,

Green was charged with being tardy when he clocked out for lunch at 11:04 a.m. and did not clock back in until 11:51 a.m. (Id.) (citing Frierson decl. ¶ 33.) On July 30, 2021, Green was charged with an unauthorized absence when he called in absent at 5:10 a.m., but he had no personal time available to cover the absence. (Id.) (citing Frierson decl. ¶ 34.) On August 2, 2021, Green was charged with being tardy when he clocked in at 6:02 a.m., after his shift started at 5:45 a.m. (Id. at PageID 302-03) (citing Frierson decl. ¶ 35.) On Wednesday, August 4, 2021, Green was charged with a no call/no show. (Id. at Page ID 303) (citing Frierson Decl. ¶ 36.) Despite the exhaustion of Green's personal time, FedEx retroactively changed his unauthorized absences on March 22, April 26, April 30, and May 18, 2021, to authorized absences. (Id.) (Frierson Decl. ¶ 37.) On each of these days, Green called in shortly before the start of his shift to report that he was sick (March 22 and May 18), that he had a personal issue (April 26), or that he was getting a COVID test (April 30). (Id.)

Thus, in total, between February 2, 2021, and July 21, 2021, Green accumulated nine unauthorized absences and two unauthorized tardies, which resulted in three "documented discussions" with management. (Id.) (Calo Aff. ¶ 12; Windham Aff. ¶ 10.) On March 8, 2021, Windham held a documented discussion with Green regarding

his violations of FedEx's Attendance and Punctuality procedures
and Acceptable Conduct policy for violations on February 3,
February 27, February 28, and March 8, 2021. (Id.) (citing Calo
Aff. ¶ 9; Windham Aff. ¶ 7.) On March 17, 2021, Windham held another
documented discussion with Green regarding his attendance and
violations of the Acceptable Conduct policy on March 15, 2021.
(Id. at PageID 305) (citing Calo Aff. ¶ 10; Windham Aff. ¶ 8.) On
July 21, 2021, Windham held a third documented discussion with
Green regarding his absences and tardies on June 8, June 15, July
7, July 8, July 9, and July 20, 2021. (Id.) (Calo Aff. ¶ 11; Windham
Aff. ¶ 9.) At each documented discussion Green was provided a form,
which reminded Green that, per FedEx policy, employees with "more
than four unauthorized absences in a rolling 12-month period . .
. may be terminated . . . ." (Id.) (Calo Aff. ¶ 11; Windham Aff. ¶
9.) By August 4, 2021, Green had accumulated a total of twelve
unauthorized absences and four unauthorized tardies in fewer than
eight months. (Id.)(Calo Aff. ¶ 13; Windham Aff. ¶ 11.)

On or about August 4, 2021, Calo and facility general manager
Christopher "Keith" Williams approved a request from Green's
direct supervisor, Windham, to terminate Green's employment,
citing Green's repeated attendance and punctuality issues. (Id. at
PageID 303) (citing Frierson decl. ¶ 38; Calo Aff. ¶ 15; Windham

Aff. ¶ 13.) Prior to Green's termination, neither Calo nor Windham
was aware of any rumors that Green had been accused of being a
kidnapper or rapist. (Id.) Because they were unaware of any such
rumors, Calo and Windham did not make any decisions about work
assignments in the Handpack department based on any such rumors.
(Id.) (citing Calo Aff. ¶ 5; Windham Aff. ¶ 6.) However, Calo and
Windham were generally aware that Green had filed a lawsuit against
FedEx in July of 2021. (Id. at PageID 305) (citing Frierson decl.
¶ 38; Calo Aff. ¶ 14; Windham Aff. ¶ 12.) That lawsuit played no
part in Calo's and Windham's August 4, 2021 decision to terminate
Green's employment. (Id. at PageID 305-06) (Frierson decl. ¶ 38;
Calo Aff. ¶ 14; Windham Aff. ¶ 12.)

The decision to terminate Green over these attendance issues
was not unprecedented. In total, between March and June 2021, Calo
and Williams approved eight requests from supervisor Laquisha
Lewis to terminate employees in the Major Components department
for repeated attendance and punctuality issues. (Id. at PageID
306) (citing Calo Aff. ¶ 16.) One of these employees was terminated
for job abandonment (three consecutive Unauthorized Absences) with
zero documented discussions. (Id.) Two of these employees were
terminated after one documented discussion, and the remainder were
terminated after two documented discussions. (Id.) In April 2021,

Calo and Williams approved two requests from supervisor Blake Sharp
to terminate employees in the Kitting department for repeated
attendance and punctuality issues. (Id.) (citing Calo Aff. ¶ 17.)
Each of those employees was terminated after only two documented
discussions. (Id.)

**F.    Green's Claims**

Green's original complaint contains the following statement
of facts:

- An older co-worker who became friends with plaintiff
  over shared interests alleges that the plaintiff had
  interests in kidnapping and raping her citing
  plaintiff's age.

- Jeff, FedEx's system manager had meeting with
  plaintiff regarding matter and mishandled the
  situation by disallowing Plaintiff to speak on his
  behalf, tells him not to speak to said co-worker, and
  ostracizes Plaintiff from almost all workers nearby
  except a handful of men.

- Plaintiff sought relief through chain of command:
  Supervisor, Systems manager, and finally Human
  resources. Supervisor and systems manager both told
  Plaintiff they are unsure if he is telling the truth
  but watches Plaintiff closely, often staring and even
  intervening when Plaintiff speaks with co-workers
  while he works, but the supervisor has given her
  miscellaneous easy work and moved her away from
  Plaintiff. Human resources delayed scheduled
  interview citing it as not as urgent as all the other
  meetings

- Rumors are brought back to plaintiff that he is a
  serial rapist and his friends that he made at the job
  disaffiliated themselves with plaintiff except for
  one.

- 15 -

- Plaintiff meets with system manager after he overhears him speak with a female co-worker who recently was moved to the other side of his workstation facing him. Plaintiff heard the woman claim she has spoken with Plaintiff, but he expressed no desire to go further, then saying I will get him to talk, then later proceeding to ask plaintiff a rhetorical question after he distanced himself from her. Plaintiff tried to have meeting but systems manger . . . got mad and said, "let's ask her." Plaintiff denied instead asking the woman the contents of their conversation. Both the woman and systems manager had conflicting stories: one about Saturday off and the other about salary increases. Systems manager tells Human resources that Plaintiff is lying.

(ECF No. 1 at PageID 7.) On August 13, 2021, Green filed an amended complaint, which states in full:

- Defamation of character was caused by the systems manager of the job site when he incorporated a female warehouse worker by slandering the plaintiffs name and using said warehouse worker to bait plaintiff and gain false evidence that will further their false narrative against plaintiff.

- Libel against the plaintiff was caused in part by the security team at FedEx when they posted pictures of plaintiff at guard posts in all the buildings depicting him as a potential threat and to not allow him in during plaintiffs paid time off, signs remained up and multiple people came to plaintiff about the poster, often asking if somethings wrong

- Unlawful termination against plaintiff two days after plaintiff overhearing systems manager speaking with plaintiff's supervisor that he is putting pressure on FedEx and in turn to also do the same and to cut plaintiff for anything. Two days later plaintiff is fired for being 1 minute late. FedEx claims the final grounds for termination was because of tardiness and some absences but plaintiff overheard them trying to remove him for anything.

- Religious discrimination occurred when plaintiff was required to take down the screen saver with the words "Christ is king." Things dealing with Jesus at the plaintiff's workstation was confiscated. Plaintiff was required not to speak about Jesus at all in the workplace by the system's manager and the system's manager doubted the sincerity of the plaintiff's religion by saying he doesn't know if the plaintiff is innocent but never allowed him to prove his innocence and separated the plaintiff from everyone accept [sic] a handful of men, often watching him closely and keeping him in the strict confines of his station.

- Plaintiff is suing for 30,000,000 siting FedEx's revenue for 2021 is at 84.0 billion dollars which is 1/2800 of their revenue. Compared to the average American's parking fine, its more lenient and will influence FedEx to take action. The **rate** of new hires and turnover at **FedEx** have both been steadily climbing for years, according to the Memphis logistics giant's 2021. Any demand substantially less than that would still enable them to continue their unlawful workplace practices as it is merely a slap on the wrist regarding their revenue and it is just pennies for them to pay that fine and continue doing what they did to the plaintiff and other coworkers who believed him and were retaliated against by FedEx

(ECF No. 8) (emphasis in original). As a general matter, amended complaints supersede original complaints. Mustin v. Guiller, 563 F. Supp. 3d 715, 721 (N.D. Ohio 2021). However, for the sake of completeness, and because Green is proceeding *pro se*, the undersigned will construe Green's amended complaint as a supplement to his original complaint, and thus will address both complaints in tandem.

## II. PROPOSED CONCLUSIONS OF LAW

- 17 -

A.    **Jurisdiction**

"The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for '[f]ederal-question' jurisdiction, [Section] 1332 for '[d]iversity of citizenship' jurisdiction." Arbaugh v. Y&H Corp., 546 U.S. 500, 512 (2006). Federal question jurisdiction is invoked when the plaintiff "pleads a colorable claim 'arising under' the Federal Constitution or laws." Id. Green's religious discrimination claim appears to be brought under Title VII of the Civil Rights Act of 1964, a federal statute. Therefore, the court has federal question jurisdiction over that claim.

The rest of Green's claims appear to be state law tort claims. Because these claims do not arise under the Constitution or federal law, the undersigned evaluates whether the court has diversity jurisdiction over these claims (or possibly supplemental jurisdiction). Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." "In the Sixth Circuit, it is generally agreed that the amount [in] controversy is determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" Fed. Nat'l Mortg. Ass'n v.

Jaa, No. 14-2065-STA-dkv, 2014 WL 1910898, at *5 (W.D. Tenn. May 13, 2014) (quoting Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 376-77 (6th Cir. 2007)). Based on the record before the court, it appears that Green is a citizen of Tennessee, and FedEx is a foreign corporation incorporated in Delaware with its principal place of business in Cranberry Township, Pennsylvania. (ECF No. 1 at PageID 3.) Green alleges in his complaint that his damages total $30,000,000. Therefore, the elements of diversity jurisdiction are met.

When a suit is before a federal court pursuant to diversity jurisdiction, the court generally applies state substantive law and federal procedural law. Jackson v. Ford Motor Co., 842 F.3d 902, 907 (6th Cir. 2016). Therefore, the undersigned will apply Tennessee substantive law when reviewing Green's state law claims.

**B.    Standards of Review**

    1.    Motion to Dismiss

In deciding a Rule 12(b)(6) motion to dismiss, the court views the allegations in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice

to the defendant as to what claims are alleged, and the plaintiff
must plead 'sufficient factual matter' to render the legal claim
plausible, i.e., more than merely possible." Fritz v. Charter Twp.
of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556
U.S. at 677). "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Iqbal, 556
U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557
(2007)). To satisfy this requirement, plaintiffs must plead more
than "labels and conclusions," "a formulaic recitation of the
elements of a cause of action," or "naked assertions devoid of
further factual enhancement." Id. (alteration omitted)
(quoting Twombly, 550 U.S. at 555, 557). "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Id.

Pro se complaints are held to less stringent standards than
formal pleadings drafted by lawyers and are thus liberally
construed. Williams v. Thomas, No. 16-1330, 2019 WL 1905166, at *1
(W.D. Tenn. Apr. 29, 2019); Williams v. Curtin, 631 F.3d 380, 383
(6th Cir. 2011). Even so, pro se litigants must adhere to the
Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d
591, 594 (6th Cir. 1989), and the court cannot create a claim that

has not been spelled out in a pleading. <u>See</u> <u>Brown v. Matauszak</u>, 415 F. App'x 608, 613 (6th Cir. 2011); <u>Payne v. Sec'y of Treas.</u>, 73 F. App'x 836, 837 (6th Cir. 2003).

    2.  <u>Motion for Summary Judgment</u>

    Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." <u>Goins v. Clorox Co.</u>, 926 F.2d 559, 561 (6th Cir. 1991).

    The party opposing a motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. <u>Banks v. Wolfe Cty. Bd. of Educ.</u>, 330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and

are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible, unsworn hearsay in deciding a motion for summary judgment. Tranter v. Orick, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. Bell, 351 F.3d at 247 (quoting Anderson, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016). These standards apply regardless of a party's *pro se* status; "the liberal pleading standard for pro se parties is 'inapplicable' 'once a case has progressed to the summary judgment stage.'" George v. Whitmer, No. 20-12579, 2021 WL 1976314, at *2 (E.D. Mich. May 18, 2021) (quoting Tucker v. Union of Needletrades, Indus., & Textile Emp., 407 F.3d 784, 788 (6th Cir. 2005)). A *pro se* party's opposition to a motion for summary judgment cannot rely on "mere allegations and unsworn filings" but must instead "set out specific facts showing a genuine issue for trial through affidavits or otherwise," just like any other summary judgment response. Id. (citing Viergutz v. Lucent Techs., Inc., 375 F. App'x 482, 485 (6th Cir. 2010)).

C.    **FedEx's Motion to Dismiss or for Summary Judgment**

1.    Defamation

Green makes two allegations of defamation: 1) that Calo
"slander[ed] the plaintiff's name," and 2) that the "security team"
at FedEx libeled him when they posted pictures of him on guard
posts "depicting him as a potential threat." (ECF No. 8.) The
elements of defamation under Tennessee law are (1) the defendant
published a statement and (2) the defendant knew the statement was
false and defaming to the plaintiff or (3) the defendant acted
with reckless disregard for the statement's truth or was negligent
in failing to determine the statement's truth. Doe v. Andrews, 275
F. Supp. 3d 880, 890 (M.D. Tenn. 2017) (citing Brown v. Christian
Bros. Univ., 428 S.W.3d 38, 50 (Tenn. 2013)). "'Publication' in
this context means communicating the defamatory matter to a third
person." Id. A defamatory statement is one that constitutes a
serious threat to the plaintiff's reputation. Id. In addition, a
plaintiff must prove actual reputation damages from the
defamation; damages cannot be presumed. Id. Actual damages may be
"impairment of reputation and standing in the community, personal
humiliation, or mental anguish and suffering." Id. Spoken
defamation constitutes slander, while written defamation
constitutes libel. Id. (citing Quality Auto Parts Co. v. Bluff
City Buick Co., 876 S.W.2d 818, 821 (Tenn. 1994)). FedEx argues

that neither of Green's allegations meet the basic pleading requirements for a defamation claim under Tennessee law. (ECF No. 75-1 at PageID 253.)

    a.   Slander

Green describes his slander claim in his amended complaint as follows: "[d]efamation of character was caused by the systems manager of the job site when he incorporated a female warehouse worker by slandering the plaintiffs name and using said warehouse working to bait plaintiff and gain false evidence that will further their false narrative against plaintiff." (ECF No. 8.) Green does not identify an allegedly defamatory statement in his amended complaint. However, Green's original complaint sheds some light on the allegedly defamatory statement. In his original complaint, Green writes, "an older co-worker who became friends with plaintiff over shared interests alleges that the plaintiff had interests in kidnaping and raping her citing plaintiff's age." (ECF No. 1 at PageID 7.) Green goes on to allege that Calo "had a meeting with plaintiff regarding matter and mishandled the situation by disallowing Plaintiff to speak on his behalf, tells him not to speak to said co-worker, and ostracizes Plaintiff from almost all workers nearby except a handful of men." (Id.) Green further claims that "[r]umors are brought back to plaintiff that he is a serial

rapist and his friends that he made at the job disaffiliated themselves with plaintiff except for one." (Id.)

Neither Green's original nor amended complaint identifies any allegedly defamatory statement made by FedEx through Calo.[5] Because Green has not identified the statement, he necessarily has failed to sufficiently allege that the statement was false or that it was made recklessly or negligently. The undersigned recommends that Green's slander claim be dismissed pursuant to Rule 12(b)(6). Moreover, Green has not presented any evidence from which a reasonable jury could find that a defamatory statement was made, and therefore FedEx is also entitled to summary judgment.

     b.   Libel

In his amended complaint, Green states the following regarding his libel claim:

> Libel against the plaintiff was caused in part by the security team at FedEx when they posted pictures of plaintiff at guard posts in all the buildings depicting him as a potential threat and to not allow him in during

---

[5]In order for FedEx to be held liable for allegedly defamatory statements made by Calo, Green would need to show that either FedEx authorized the speaking of the slanderous words, that it would be necessary for an employee to speak them in the performance of the duty assigned to the employee, or that the statements had been ratified by the employer. Craft v. Philips Electronics N. Am. Corp., No. 2:12-cv-3024-JPM-dkv, 2013 WL 4498971, at *14 (W.D. Tenn. Aug. 19, 2013) (citing Tate v. Baptist Mem'l Hosp., Case No. W1999-00553-COA-R3-CV, 2000 WL 1051851, at *4 (Tenn. Ct. App. Jul. 28, 2000)). Green has not even demonstrated that a FedEx employee made a defamatory statement, and thus has certainly not shown that the statement was authorized or ratified by FedEx.

> plaintiffs paid time off, signs remained up and multiple
> people came to plaintiff about the poster, often asking
> if somethings is wrong[.]

(ECF No. 8.) FedEx admits that while Green was suspended, they
provided contracted security personnel with a photo of Green
because he was barred from entering the facility during his
suspension. (ECF No. 10 at PageID 32.) FedEx also acknowledges
that the security personnel proceeded to place copies of the photo
in locations that were visible to other employees. (Id.) When FedEx
was informed that Green's photo had been placed in such locations,
the security personnel were directed to remove the photos
immediately. (Id.)

Green sufficiently alleged publication because a FedEx
employee, in the scope of their employment with FedEx, emailed the
photo of Green to the security officers along with the following
statement: "We'd like to initiate a BOLO on this teammate until
further notice. He has not been terminated but his access badge
was taken today and, pending completion of an investigation, we
would like to ensure he has no access to either of the MDC
facilities." (ECF No. 75-3 at PageID 301.) However, Green has not
alleged that anything about the photo and accompanying statement
was false. It is undisputed that Green was in fact not allowed to
enter the FedEx facility during his time off because a Human
Resources officer had concerns that Green might present a danger

to himself or others. (ECF No. 75-3 at PageID 301.) No reasonable
jury could find that the statement that Green was not allowed in
the facility was false. Therefore, the undersigned recommends
dismissal of Green's libel claim.

    2.   Wrongful Termination

    In his amended complaint, Green also alleges "wrongful
termination," stating the following:

> Unlawful termination against plaintiff two days after
> plaintiff overhearing systems manager speaking with
> plaintiff's supervisor that he is putting pressure on
> FedEx and in turn to also do the same and to cut
> plaintiff for anything. Two days later plaintiff is
> fired for being 1 minute late. FedEx claims the final
> grounds for termination was because of tardiness and
> some absences but plaintiff overheard them trying to
> remove him for anything.

(ECF No. 8.) Green does not cite to any state or federal statute
pursuant to which he can bring this claim. However, Tennessee
recognizes a common law tort of retaliatory discharge, which is
synonymous with wrongful discharge and wrongful termination.
Fonseca v. Golden Living Center-Mountainview, No. 4:09-cv-93, 2010
WL 3155984 (E.D. Tenn. Aug. 10, 2010) (citing Clanton v. Cain Sloan
Co., 677 S.W.2d 441 (Tenn. 1984)). To establish a claim of
retaliatory discharge, the plaintiff must prove:

> (1) that an employment-at-will relationship existed; (2)
> [the employee] was discharged; (3) the reason for [the]
> discharge was that [the employee] attempted to exercise
> a statutory or constitutional right, or for any other
> reason which violates a clear public policy evidenced by

an unambiguous constitutional, statutory, or regulatory
provision; and (4) that a substantial factor in [the
employer's] decision to discharge [the employee] was
[the employee's] exercise of protected rights or
compliance with clear public policy.

Id. (citing Southmayd v. Apria Healthcare, Inc., 412 F. Supp. 2d
848, 862 (E.D. Tenn. 2006)). It is undisputed that Green was
employed at will by FedEx and then discharged. However, Green has
not alleged that the reason for his termination was in retaliation
for his attempting to exercise a statutory or constitutional right.
He vaguely alleges that he overhead Calo stated that Green was
"putting pressure" on FedEx; however, Green does not claim that he
was terminated for trying to exercise a right. Indeed, Green does
not provide any basis as to the "real" reason why FedEx terminated
his employment, but simply claims that FedEx used his absences and
tardies as an excuse to fire him. FedEx has provided well-
documented evidence of Green's pervasive attendance and
punctuality issues, which provided a legitimate reason for
termination. Even assuming arguendo that Green has stated a claim
for wrongful termination, he does not present any evidence from
which a reasonable jury could find that his exercise of a protected
right was a substantial factor in his termination. Therefore,
Green's wrongful termination claim does not survive summary
judgment.

    3.    "Discrimination" and Religious Discrimination

- 28 -

In their Motion to Dismiss or for Summary Judgment, FedEx refers to a general discrimination claim based on the title of Green's original complaint: "Complaint against FedEx regarding discrimination and calumny against Plaintiff Sheldon Green." (ECF No. 1 at PageID 7.) Neither Green's original nor amended complaint refers to any discriminatory conduct besides perhaps religious discrimination. Therefore, to the extent such a claim is even being brought, it should be dismissed pursuant to 12(b)(6) for failure to state a claim.

In his amended complaint, Green claims that he was discriminated against because he was required to take down a screensaver that said "Christ is king" and that items relating to Jesus were confiscated from his workstation. (ECF No. 8.) Further, Green contends that Calo ordered him to refrain from speaking about Jesus at all and that Calo "doubted the sincerity of the plaintiff's religion by saying he doesn't know if the plaintiff is innocent but never allowed him to prove his innocence and separated the plaintiff from everyone accept a handful of men, often watching him closely and keeping him in the strict confines of his station." (Id.) Although it is unclear from Green's original or amended

complaint the authority pursuant to which he brings this claim,

Green's "notice" filed at ECF No. 55 states as follows:[6]

> Title VII of the Civil Rights Act of 1964 prohibits
> employment discrimination based on religion. This
> includes refusing to accommodate an employee's sincerely
> held religious beliefs or practices unless the
> accommodation would impose an undue hardship (more than
> a minimal burden on operation of the business. A
> religious practice may be sincerely held by an
> individual even if newly adopted, not consistently
> observed, or different from the commonly followed
> tenants of the individual's religion. Title VII also
> prohibits workplace or job segregation based on religion
> (including religious garb and grooming practices), such
> as assigning an employee to a non-customer contact
> position because of actional or feared customer
> preference.

Therefore, it appears that Green is attempting to bring his

religious discrimination claim under Title VII.

FedEx argues that Green's claim of religious discrimination

is procedurally barred due to his failure to administratively

exhaust these claims with the EEOC. (ECF No. 75-1 at PageID 259.)

"[A]n employee alleging employment discrimination in violation of

[Title VII] must first file an administrative charge with the EEOC

within a certain time after the alleged wrongful act or acts."

Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 362 (6th Cir.

---

[6]ECF No. 55 is a notice filed as a response to Green's own objection
to the undersigned's Report and Recommendation to deny Green's
Motion for Partial Summary Judgment. It was filed after the
presiding District Judge had already adopted the Report and
Recommendation. (ECF No. 54.)

2010) (citing 42 U.S.C. § 2000e-5(e)(1)). "The charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" Id. (quoting 29 C.F.R. § 1601.12(b)). The plaintiff bears the burden to show they have exhausted their administrative remedies. Hines v. Pilgrims Pride, 1:19-cv-11-HSM-CHS, 2019 U.S. Dist. LEXIS 38657, at *2 (E.D. Tenn. Feb. 15, 2019). The administrative exhaustion and charge filing requirement has been found to be non-jurisdictional, and thus can be waived. Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1850-51 (2019).

Green's original and amended complaints do not indicate whether he has filed an administrative claim, let alone whether he has received notice from the EEOC that it has completed its investigation into his claim and that he has the right to bring suit in this court.[7] Accordingly, the undersigned recommends that Green's Title VII claim be dismissed for failure to exhaust administrative remedies.

---

[7]When asked during his deposition whether he had filed a claim with the EEOC, Green testified that he had but that the EEOC had dismissed his claim. (ECF No. 75-2 at PageID 266-67.) When asked what he alleged in his EEOC charge, Green answered, "What I alleged in my initial disclosures . . . What Jeff did." (Id.) However, Green has presented no evidence that he ever filed a charge with the EEOC, nor what allegations were made in that charge.

Additionally, Green's religious discrimination claim should
be dismissed for failure to state a claim. The essential elements
of a Title VII discrimination claim are: (1) the plaintiff is a
member of a protected group; (2) they were subjected to an adverse
employment action; (3) they were qualified for the position; and
(4) either similarly situated, non-protected employees were
treated more favorably or they were replaced by someone outside of
their protected class.[8] Benitez v. Tyson Fresh Meats, Inc., 3:18-
cv-00491, 2022 WL 1283087, at *18 (M.D. Tenn. Apr. 28, 2022).
Although it is questionable whether Green has even identified
himself as a member of a protected class, he certainly has not

---

[8]It is unclear from Green's complaints whether his religious-
discrimination claim is grounded on the theory that he was
terminated based on his religion or on a failure-to-accommodate
theory. "Courts . . . have recognized, as a variant of a religious
discrimination claim, a cause of action for an employer's failure
to reasonably accommodate an employee's religious beliefs."
Mohamed v. 1st Class Staffing, LLC, 286 F. Supp. 3d 884, 900 (S.D.
Ohio 2017). To establish a failure to accommodate claim, a
plaintiff must show that (1) they hold a sincere religious belief
that conflicts with an employment requirement; (2) they have
informed the employer about the conflicts; and (3) they were
discharged or disciplined for failing to comply with the
conflicting employment requirement. Benitez, 2022 WL 1283087, at
*63, n.120 (citing Smith v. Pyro Min. Co., 827 F.2d 1081, 1085
(6th Cir. 1987)). To the extent Green intended to bring a failure
to accommodate claim, that claim should also be dismissed because
he has advanced no evidence that he holds a sincere religious
belief that conflicts with an employment requirement, that he told
FedEx about that conflict, or that he was discharged for this
conduct.

alleged any facts or presented any evidence that shows he was replaced by a person outside his protected class, or was treated less favorably than a similarly situated individual outside his protected class. Therefore, the undersigned recommends that his religious discrimination claim also be dismissed.

**D.    Green's Motion to Amend and FedEx's Motion to Strike**

On May 27, 2022, Green filed a second amended complaint without seeking leave from the court. (ECF No. 77.) However, later that same day, Green filed a motion to amend his complaint, seeking to add the claims of solicitation of a crime and intentional infliction of emotional distress. (ECF No. 78.) On June 3, 2022, FedEx filed a response opposing this motion, arguing that "ECF No. 79 rehashes plaintiff's conclusory allegations against Defendant and attempts to paint these allegations as new causes of action." (ECF No. 83.) On June 20, 2022, FedEx filed a motion to strike the amended complaint. (ECF No. 89.) FedEx argues Green missed the deadline for motions to amend pleadings, which was on November 15, 2021. (Id. at PageID 352.) Further, FedEx claims that Green failed to comply with Federal Rule of Civil Procedure 15 because he did not seek the consent of FedEx or leave from the court before filing the second amended complaint. (Id. at PageID 353.) Finally, FedEx contends that Green failed to seek leave of the court to modify

the deadline for motions to amend pleadings, as required by Rule 16. (Id. at PageID 354.)

At this point, discovery has closed and the dispositive motion deadline has passed. (ECF No. 17.) Further, after reviewing the complaint, the undersigned finds that any amendment would be futile. Sarrell v. Waupaca Foundry, Inc., 1:17-cv-56-TRM-SKL, 2017 WL 3161147, at *2 (E.D. Tenn. Jul. 25, 2017) ("Although leave to amend is ordinarily freely given under Fed. R. Civ. P. 15, an amendment may be denied as futile if the claim sought to be added 'could not withstand a Rule 12(b)(6) motion to dismiss.'") (citing Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000)). Green attempts to bring a claim of "solicitation of a crime." Green does not cite any authority for this claim and the undersigned is not aware of any such civil cause of action.

Green also seeks to add a claim of intentional infliction of emotional distress. This claim would also not survive a Rule 12(b)(6) motion to dismiss. Under Tennessee law Green must sufficiently allege that FedEx engaged in conduct that "(1) [was] intentional or reckless, (2) so outrageous that [it] is not tolerated by civilized society, and (3) resulted in serious mental injury[.]" Sharpe v. CoreCivic, LLC, No. 3:20-cv-00122, 2020 WL 6273919, at *2 (M.D. Tenn. Oct. 26, 2020) (quoting Rogers v. Louisville Land Co., 367 S.W.3d 196, 205 (Tenn. 2012)). Green has

not alleged any conduct that would plausibly meet the high standard for outrageousness. Cossairt v. Jarrett Builders, Inc., 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018) (noting that "cases finding conduct sufficient to support an [IIED] claim are few and far between."). Accordingly, the undersigned recommends that the Green's motion to amend be denied and that FedEx's motion to strike be denied as moot.

### III. RECOMMENDATION

For the above reasons, it is recommended that FedEx's Motion to Dismiss or for Summary Judgment be granted, Green's Motion for Reconsideration of Claim be denied, and FedEx's Motion to Strike be denied as moot.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

August 3, 2022
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS**

**MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**